UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES TRICE,

     Applicant,

v.                          CASE NO. 8:11-cv-1453-T-26AEP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Charles Trice applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his convictions for first degree murder, violation of a domestic violence injunction, and burglary of a dwelling with assault, for which convictions Trice is imprisoned for life. The respondent moved to dismiss the application as time-barred, which motion was denied because Trice's post-conviction counsel's misconduct allowed for equitable tolling under *Holland v. Florida*, 560 U.S. 631 (2010). The respondent filed her response in opposition to the application, which response is supported by seven exhibits ("Exhibit 1-7"). (Doc. 9) The respondent argues (1) that Grounds Two, Three, and Four are not fully exhausted because Trice failed to fairly present the constitutional dimension of these claims to the appellate court and (2) that these unexhausted grounds are procedurally barred from federal review. Trice replies. (Doc. 14) The application is fully briefed and ripe for a decision.

## BACKGROUND

Trice was convicted for killing his estranged wife at their marital residence. The couple was separated and Trice was no longer living at the residence at the time of the shooting. However, Trice had access to an office that was attached to the back of the house. The office was accessible through an exterior door that allowed Trice to enter his office without entering the rest of the residence. A domestic violence injunction barred Trice from entering the rest of the residence but allowed him to access the office through the exterior door. Trice was a trooper with the Florida Highway Patrol and kept tools and paperwork for his job in the office. A door connected the office and the rest of the residence; however, that door could be locked from both the residence and the office.

On the day of the shooting Trice visited the residence on two occasions. On the first visit Trice brought the couple's daughter back to the residence after she had spent the day with him. Trice returned a second time later that day and entered the residence through the garage door in violation of the domestic injunction violation. The prosecution used this trespass to charge Trice with felony-murder and burglary with assault.

During the second visit Trice and the victim argued in his office over who would possess the couple's Corvette. The sports car had been a source of several altercations between Trice and the victim. During the altercation Trice shot and killed the victim. After emergency personnel arrived at the scene, Trice was taken to

a hospital and treated for a stab wound to his shoulder. Sgt. Ken Lane, a Florida Highway Patrol Trooper ("Trooper Lane") accompanied Trice to the hospital.

Trooper Lane returned the next day and accompanied Trice back to the residence. Trooper Lane was not conducting an investigation of the shooting but testified that he accompanied Trice as his friend. While at the residence, Trice detailed to Trooper Lane what happened during the shooting. Trice told Trooper Lane that he and the victim were arguing. Trice stated that he was kneeling with his back to the victim retrieving some equipment from the office closet. When he turned around, the victim stabbed him in the shoulder with a paring knife. Trice stated that he was in shock and feared for his life. Trice grabbed his .357 revolver from a shelf and shot the victim at point-blank range. Trice entered the residence, called 911, and took his young daughter to her room.

After hearing Trice's explanation of the shooting, Trooper Lane told him his story was not supported by the blood splatter, the body tissue residue, and the hole-in-the wall created when the slug exited the victim's body. Trooper Lane further noted that — based on the marks in the carpet — the furniture apparently had been rearranged in the office to support Trice's explanation. Maintaining that he acted in self-defense, Trice persisted in this explanation through the trial and the appeal. The forensic evidence supported the prosecutor's theory that Trice stabbed himself with the small paring knife after he shot and killed the victim.

**<u>STANDARD OF REVIEW</u>**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this application. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied — the
> state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined
> by the Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law or if the state

court decides a case differently than this Court has on a set of
materially indistinguishable facts. Under the "unreasonable
application" clause, a federal habeas court may grant the writ if
the state court identifies the correct governing legal principle
from this Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a

vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court on direct appeal affirmed Trice's convictions and sentence. (Respondent's Exhibit 2) Similarly, in another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Trice's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 6) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

As *Pinholster*, 131 S. Ct. at 1398, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Trice bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Trice's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 7)

## EXHAUSTION AND PROCEDURAL DEFAULT

An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a petitioner must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

An applicant must alert the state court that he is raising a federal claim and not only a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

Finally, presenting a federal claim to a state court without the facts necessary to support the claim is insufficient. *See, e.g., Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court."). Specifically based on Trice's failure to exhaust, the respondent opposes Grounds Two, Three, and Four.[1]

The respondent argues (1) that on direct appeal Trice summarily briefed the constitutional claims alleged in Grounds Two, Three, and Four but without explaining the manner in which those rights were violated and (2) that Trice's summary constitutional claims in the state court were inadequate to alert the trial court to the specific constitutional violation alleged. Although the respondent is correct that a federal applicant for the writ of habeas corpus must first exhaust the claim in the state court, the respondent's suggestion — as the respondent calls his argument — is not well taken. Although Trice's claims on direct appeal may have lacked the exactness that respondent claims is necessary, the presentation alerted the state court that Trice asserted a constitutional claim. Therefore, the grounds warrant a review on the merits.

---

[1] The exhaustion requirement precludes relief based on an unexhausted claim unless the respondent specifically waives the procedural default. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005), *cert. denied*, 547 U.S. 1073 (2006).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Trice claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent

assistance." 466 U.S. at 690.

Trice must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect

on the judgment." 466 U.S. at 691–92. To meet this burden, Trice must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation

of law and facts relevant to plausible options are virtually unchallengeable; and

strategic choices made after less than complete investigation are reasonable precisely

to the extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690–91. Trice cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would
> have done. Nor is the test even what most good lawyers would
> have done. We ask only whether some reasonable lawyer at the
> trial could have acted, in the circumstances, as defense counsel
> acted at trial . . . . We are not interested in grading lawyers'

> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial

lawyers, in every case, could have done something more or something different.

So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is

prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*)

(*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's

investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267

(11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to
> investigate particular facts or a certain line of defense."
> *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to
> make *reasonable* investigations or make a *reasonable* decision
> that makes particular investigations unnecessary." *Strickland*,
> 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added).
> "[C]ounsel need not always investigate before pursuing or not
> pursuing a line of defense. Investigation (even a nonexhaustive,
> preliminary investigation) is not required for counsel reasonably
> to decline to investigate a line of defense thoroughly." *Chandler*,
> 218 F.3d at 1318. "In assessing the reasonableness of an
> attorney's investigation . . . a court must consider not only the
> quantum of evidence already known to counsel, but also
> whether the known evidence would lead a reasonable attorney
> to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at
> 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty

to raise a frivolous claim).

Under 28 U.S.C. § 2254(d), Trice must prove that the state court's decision

was "(1) . . . contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The state court conducted an evidentiary hearing and denied the claims of ineffective assistance of counsel with the following introduction: "When ineffective assistance of counsel is alleged, the burden is on the person seeking collateral relief to allege the grounds for relief specifically, and to establish whether the grounds for relief resulted in prejudice." (Respondent's Exhibit 5C at 424) Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that

future developments in law must be anticipated. *See Meeks v. State*, 382 So. 2d 673 (Fla. 1980). The state post-conviction court determined that Trice failed to meet his burden under *Strickland.* (Respondent's Exhibit 5C at 424) Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Trice cannot meet the "contrary to" test in Section 2254(d)(1). Trice instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## DISCUSSION

Trice alleges five grounds of trial court error and eight grounds of ineffective assistance of counsel: that the trial court erred by denying his motion for judgment of acquittal (Ground One); that in this "self-defense case" the trial court erred by allowing unreliable hearsay to establish the victim's state of mind (Ground Two); that the trial court erred by refusing to allow Trice to present evidence that, even in the absence of an immediate threat, a battered spouse can become an aggressor (Ground Three); that the trial court erred by allowing a non-expert witness to

opine on the ultimate issue of fact and to usurp the function of the jury (Ground Four); that trial counsel failed to adequately investigate Trice's locked-door defense (Ground Five); that trial counsel failed to call a witness who would have supported an argument that Trice and the victim were friendly before the shooting (Ground Six); that trial counsel failed to call a witness to explain the effect of shock on Trice's demeanor (Ground Seven); that trial counsel misadvised Trice about the admissibility of Trice's record as a law enforcement officer (Ground Eight); that trial counsel failed to recuse the trial judge (Ground Nine); that trial counsel failed to object to Trooper Lane's testimony or to present an expert to rebut Lane's testimony about blood splatter and ballistics (Ground Ten); that trial counsel failed to move for a change of venue (Ground Eleven); that trial counsel failed to preserve specific issues for appeal (Ground Twelve); and that the trial court improperly denied Trice's motion for post-conviction relief based on the denial of a change in the law (Ground Thirteen).

### Ground One:

Trice argues that his conviction is erroneous because the jury returned a general verdict. At trial the prosecution argued that Trice was guilty on one of two alternative theories: premeditated first degree murder or felony-murder. The trial judge instructed the jury under both theories. The jury returned a verdict of guilty without specifying which theory supports the conviction. Trice unsuccessfully moved for a judgment of acquittal. Trice argues that insufficient evidence supported a charge of first degree murder because all of the evidence against him was

circumstantial. Trice argues that the trial court's denying his motion for judgment of acquittal violated his constitutional rights under both the Due Process Clause and the Equal Protection Clause.

A general verdict supports a conviction even though the evidence is insufficient to support a conviction on one charged count if the evidence supports a conviction on another charged count. *Clark v. Crosby*, 335 F. 3d 1303, 1309 (11th Cir. 2003) (quoting *Griffin v. United States*, 502 U.S. 46, 43 (1991)). Sufficient evidence was presented at Trice's trial to support the general verdict. A few days before the murder Trice admitted that "maybe he ought kill his wife," and on the day of the murder he twice visited his estranged wife's residence. The first visit was to return his daughter. On the second visit Trice was seen entering the residence through the garage — an unlawful entry that supports Trice's convictions both for violating a domestic violence injunction and for burglary with assault. The felony-murder conviction was based on the burglary with assault. Under *Clark*, sufficient evidence supports the prosecution's felony-murder theory. The trial court's denying Trice's motion for a judgment of acquittal violated no constitutional right. Accordingly, Trice is entitled to no habeas relief on Ground One.

**Ground Two:**

Trice argues that the trial court erred by allowing hearsay to establish the victim's state of mind. The respondent argues that the trial court allowed the hearsay because the victim's state of mind was relevant to rebut Trice's self-defense claim.

The trial court allowed the testimony of thirteen witnesses who testified about the victim's fear of Trice. (Respondent's Exhibit 2 at 14) The challenged statements were admitted to show the victim's state of mind, specifically, her fear of Trice. The trial court specially instructed the jury that the statements were not evidence of any act by Trice or evidence of Trice's state of mind. The state appellate court affirmed the trial court's decision and found that under Florida law the victim's hearsay statements demonstrate the victim's fear of the defendant and that the statements are admissible to rebut the defendant's asserted self-defense. *See Peterka v. State*, 640 So. 2d 59 (Fla. 1994).

From the moment he called 911 to report the shooting, Trice began claiming that he acted in self-defense. Trice told Trooper Lane, who visited the crime scene with Trice, that the victim attacked him with a knife and that the only choice he had was to shoot the victim to defend his own life. Trice testified at trial that he acted in self-defense because the victim attacked him with a knife. Because Trice raised the self-defense issue at trial, under Florida law the trial court properly allowed the prosecutor to present testimony showing the victim's fear of Trice as rebuttal evidence. *Stoll v. State*, 762 So. 2d 870, 874 (Fla. 2000) (holding that while a victim's hearsay statements in a homicide case that the victim was afraid of the defendant generally are not admissible under the state of mind exception, a victim's state of mind might become relevant if the defendant claims self-defense). Accordingly, Trice is entitled to no habeas relief on Ground Two.

**Ground Three:**

Trice argues that the trial court erred by refusing to allow evidence that a battered spouse can become an aggressor even in the absence of an immediate threat. Trice wanted to call an expert to support his proposed defense that an individual who was not battered, but imagined she was battered, can become the aggressor even without an apparent and immediate threat. After a pretrial hearing, the trial court denied Trice's request and found no evidence to support the claim that a spouse who imagines that she is abused can suffer from "battered woman syndrome." (Respondent's Exhibit 1C at 377) The appellate court affirmed the trial court's ruling.

Under Section 90.704, Florida Statutes, an expert's opinion must derive from "facts or data . . . of a type reasonably relied upon by experts in the subject to support the opinion expressed." During the pretrial hearing Trice's expert testified that he had "insufficient evidence to state, within the bounds of reasonable psychological probability, that [the victim] was a battered spouse or to determine her state of mind" on the day of death. (Respondent's Exhibit 1C at 382) As a consequence, the trial court found that Trice's expert did not meet the requirements of Section 90.704 because the expert admitted his lack of sufficient facts to support an admissible opinion.

Further, the trial court noted that the proposed testimony was deficient under *Ramirez v. State*, 651 So. 2d 1164, 1167 (Fla. 2d DCA 1995), which requires the

proponent of a scientific opinion to establish that the expert testimony is reliable by

proving (Respondent's Exhibit 1C at 375):

> [T]he general acceptance of both the underlying scientific principle and the testing procedure used to apply that principle to the facts of the case at hand. The trial judge has the sole responsibility to determine this question. The general acceptance under the *Frye* test must be established by a preponderance of the evidence.

Relying on both the Florida statute and applicable precedent, the trial court

held that Trice's opinion about a victim's imaginary belief that she suffers from

"battered woman syndrome" was a novel approach that failed to meet *Ramirez's*

general acceptance test. The trial court's ruling was proper, and Trice is entitled to

no habeas relief on Ground Three.

**Grounds Four and Ten:**

Both Ground Four and Ground Ten involve Trooper Lane's testimony about

the physical evidence observed by Trooper Lane at the residence the day after the

shooting. Because Ground Four and Ground Ten are so closely related, Ground

Ten will be considered out of sequence.

In Ground Four Trice contends that the trial court erred by allowing a

non-expert witness to usurp the function of the jury by opining on the ultimate issue

of fact. Trooper Lane testified at trial that Trice's description of the shooting was

inconsistent with the physical evidence. Trooper Lane testified as follows

(Respondent's Exhibit 1J at 1070):

> If you shot her from the position there in the closet, why is there no body tissue near the area of the closet? Why did the

> bullet not go straight through her body and — and hit the
> wall? Um, the bullet exited her body and struck a window
> approximately six foot [sic] to the left of the body. Um, his
> response was the bullet possibly had struck her spine and was
> deflected left.

Trice argues that the prosecution offered no expert opinion on blood splatter or on

ballistics and used Trooper Lane's lay testimony — instead of expert testimony — to

refute Trice's version of the events that led to the shooting.

The respondent argues (1) that Trooper Lane's testimony was proper because

he is an intelligent person whose experience with firearms naturally suggests to him

that Trice's description of the shooting did not match with the physical evidence and

(2) that the trial court committed no error by allowing Trooper Lane to testify about

his conversation with Trice.

In citing the advisory committee notes to Rule 701, Federal Rules of Evidence,

*Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., LTD.*, 320 F. 3d 1213, 1222

(11th Cir. 2003) (brackets original), explains:

> [M]ost courts have permitted [officers] to testify . . . without the
> necessity of qualifying the witness as [an] . . . expert. Such
> opinion testimony is admitted not because of experience,
> training or specialized knowledge within the realm of an expert,
> but because of the particularized knowledge that the witness
> has by virtue of his or her position in the business.

Trooper Lane's testimony about his conversation with Trice at the residence was not

as an expert on ballistics or blood splatter. Trice's trial counsel had the opportunity

to cross-examine Trooper Lane and inquire if he had any expertise in ballistics or

blood stain evidence. (Respondent's Exhibit 1J at 1079) Trooper Lane based his

testimony on Trice's explanation of the shooting, not based on an investigation of the death of the victim. Trooper Lane told Trice that the path of the bullet and the lack of body tissue and blood splatter near the closet (where Trice said he shot the victim) was inconsistent with Trice's description of the shooting. Trooper Lane had the experience, personal knowledge, and training to testify that Trice's description of the shooting was inconsistent with the evidence apparent at the crime scene. As a consequence, the trial court did not err in allowing Trooper Lane's testimony. Accordingly, Trice is entitled to no habeas relief on Ground Four.

In Ground Ten Trice argues that trial counsel was ineffective for failing to object to Trooper Lane's testimony and for failing to present an expert in blood splatter or reconstruction to rebut Trooper Lane's testimony. The respondent argues that trial counsel objected to the proffered testimony of Trooper Lane, whose testimony the trial court limited but did not entirely exclude.

Trial counsel testified at the post-conviction hearing that he finds blood splatter experts unreliable and that he carefully limited the testimony of the State's blood splatter expert. (Respondent's Exhibit 5C at 447–448) Trial counsel testified that defense testimony from a blood splatter or reconstruction expert would have invited the prosecutor to expand the testimony of the prosecution's blood splatter expert after trial counsel had successfully limited the prosecutor's expert testimony. The post-conviction court held that not calling a reconstruction expert and not calling a blood splatter expert were permissible and reasonable strategic decisions by trial

counsel. (Respondent's Exhibit 5C at 448) Trial counsel further testified that he felt that cross-examining Trooper Lane and the prosecutor's expert was sufficient.

Based upon the record, trial counsel acted reasonably in not calling a defense expert. Further, Trice was not prejudiced by trial counsel's strategy because had he called an expert, the prosecutor could have presented expert evidence that trial counsel had precluded. Trial counsel's strategy was reasonable. The post-conviction court's finding that trial counsel's strategy was reasonable is supported by the record. Accordingly, Trice is entitled to no habeas relief on Ground Ten.

**Ground Five:**

Trice claims that trial counsel rendered "inept and unprofessional representation" by failing to investigate his "locked-door" defense. Trice argues that trial counsel failed to investigate whether the exterior door to his office was unlocked at the time of the shooting. Trice believes that an unlocked office door would evidence that he lawfully entered the residence through his exterior office door — as allowed in the domestic violence injunction — and not unlawfully through the garage door. Trice's illegal entrance through the garage door is the basis for his conviction for felony-murder. Trice asserts that he entered his office through the exterior door and his estranged wife entered his office through the residence door and attacked him.

In his post-conviction motion, Trice argued that trial counsel's refusal to ask Trooper Lane whether the exterior entrance to Trice's office was unlocked amounts to ineffective assistance of counsel. However, Trooper Lane's testimony at the

hearing on Trice's post-conviction motion contradicts Trice's claim. Trooper Lane testified that, when talking with sheriff's deputies investigating the crime scene, Trice showed the deputies how he entered and exited his office. Trooper Lane testified Trice had keys in his hand as he showed the deputies the door. Although he could not confirm that Trice used the key to open the office door, Trooper Lane testified that, if the door was unlocked, Trice would not need the key. Questioned further, Trooper Lane testified as follows (Respondent's Exhibit 5D at 645–647):

> Sir, if he was trying to be emphatic with the two detectives that that was the way he gained entrance into the house and this door was unlocked, why wouldn't he walk over to the door, turn the knob and say, it's still unlocked, that's how I came in. Why would he need a key for any reason? The door was either open or it was closed, it was locked or unlocked. He certainly wouldn't need a key if it was unlocked.

The post-conviction court found that Trooper Lane's testimony about the locked door would not have helped Trice at trial. As Trooper Lane testified, if the door was unlocked no key was needed to demonstrate how the lock worked — Trice could have easily opened an unlocked door. The post-conviction court concluded that "[b]ecause the testimony which Trooper Lane did offer would not have assisted in the 'door lock' defense, the [c]ourt finds that Defendant has failed to show how his former counsel performed deficiently in failing to elicit such testimony from Trooper Lane during trial."

Trice argues that trial counsel's representation was ineffective by failing to investigate the locked-door defense. However, a tactical decision by trial counsel is ineffective assistance only if not presenting the defense was so patently unreasonable

that no competent attorney would have chosen that strategy. *Adams v. Wainwright*, 709 F. 2d 1443, 1445 (11th Cir. 1983). Because most lawyers do not enjoy the benefit of endless time, boundless energy, and inexhaustible money, an effective and reasonable — even astute — "strategy" can include a decision not to investigate. *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994). *Strickland*, 466 U.S. at 691, explains that the ineffectiveness question turns on whether the decision not to pursue a particular investigation was reasonable. *See Atkins v. Singletary,* 965 F. 2d 952, 958 (11th Cir. 1992) (noting that "[a]t some point, a trial lawyer has done enough," and that "[a] lawyer can almost always do something more in every case"); *Gates v. Zant*, 836 F. 2d 1492, 1498 (11th Cir. 1989) (as long as his decision was reasonable under circumstances, counsel may elect to forego a particular line of defense without first investigating it substantially). Given that the testimony of Trooper Lane at the post-conviction hearing controverted Trice's defense, trial counsel's deciding not to pursue the locked-door defense was a reasonable tactical decision. The post-conviction court reasonably determined that trial counsel was not ineffective under *Strickland* because Trice was not prejudiced by trial counsel's strategic or tactical decision. Accordingly, Trice is entitled to no habeas relief on Ground Five.

**Ground Six:**

Trice contends that trial counsel was ineffective for not calling a witness who would have supported his contention that his relations with the victim were amicable during the several months preceding the shooting. Trice wanted trial counsel to call

as a witness his divorce attorney, who Trice contends would have testified that relations between Trice and his estranged wife were peaceful and that the divorce settlement was amicable. Also, Trice wanted his neighbor to testify. Trice asserts that the neighbor would have testified that the neighbor had seen Trice and his estranged wife in the front yard a few months before the shooting and that the two were tranquil. Additionally, Trice wanted to call two witnesses from a car dealership ("dealership witnesses"). Trice contends the dealership witnesses would have testified that they saw the victim become enraged over the dealership's refusal to release Trice's Corvette to her. Trice argues that possession of the Corvette was the flashpoint that led to the shooting. Finally, Trice wanted to call a friend to testify that the friend had spent time with Trice and his estranged wife and that Trice never directed anger or a threat toward his wife. The respondent argues that trial counsel's decision not to call these witnesses was a reasonable and sound strategy.

The post-conviction court noted that Trice's divorce attorney never spoke to Trice's estranged wife and could recount only what Trice had said. The post-conviction court concluded that Trice "failed to produce evidence that his divorce attorney had admissible relevant testimony which he could have offered at trial if he had been called as a witness." (Respondent's Exhibit 5C at 431) Trial counsel did not call Trice's divorce attorney to testify because no applicable hearsay exception would allow the attorney to testify about the victim's comments.

Trial counsel did not call Trice's neighbor because trial counsel concluded the testimony was unhelpful. Also, trial counsel did not call the dealership witnesses to

testify about the incident over the Corvette because the dealership's service manager testified.  At the post-conviction evidentiary hearing, trial counsel said he could not remember exactly why he did not call the dealership witnesses other than he decided that the dealership's service manager was a better witness. (Respondent's Exhibit 5C at 433)  After the hearing the post-conviction court held that trial counsel did not call the dealership witnesses because their testimony was less specific than the service manager's testimony.  The post-conviction court continued that the dealership witnesses could also testify about a second incident involving the Corvette at which the victim was meek and non-confrontational.  Therefore, the dealership witnesses's testimony would not be beneficial to the defense's argument that the Corvette was a flashpoint that would always enrage the victim.

The post-conviction court held as follows (Respondent's Exhibit 5C at 435):

> [T]he court finds that [trial counsel's] decision not to call either of these witnesses was reasonable. Judicial scrutiny of counsel's trial decisions should be afforded great deference. *See Strickland*, 466 U.S. 689. A reasonable strategic decision by counsel does not constitute ineffective assistance of counsel.

Finally, the post-conviction court considered the testimony of Trice's friend. Trice avers that his friend could testify to the good relations between Trice and the victim.  However, the friend testified at the post-conviction hearing that he socialized with Trice and the victim on only one occasion before Trice's marriage to the victim. (Respondent's Exhibit 5C, at 435)  The post-conviction court found that, because Trice's friend could not testify from personal knowledge of the relations between

Trice and the victim, his testimony was unhelpful.  Therefore, the post-conviction court found no error by trial counsel.

A trial attorney's decision not to call a certain witness is a strategic decision that constitutes ineffective assistance only if not presenting the evidence is a patently unreasonable strategy that no competent attorney would choose.  *Adams v. Wainwright*, 709 F. 2d 1443, 1445 (11th Cir. 1983).  In this instance, trial counsel decided that calling Trice's divorce attorney was not possible because no hearsay exception would allow the testimony.  Calling the dealership witnesses would have diminished trial counsel's argument that the victim became enraged over possession of the Corvette because the dealership witnesses would testify that on a similar occasion she was meek and mild-mannered about losing the Corvette.  Trial counsel's decision not to call Trice's friend was reasonable because his testimony about Trice's and the victim's relations was based on meeting the victim only once.

After a review of the witnesses and the trial court's rulings, the post-conviction court's holding was not unreasonable.  Accordingly, Trice is entitled to no habeas relief on Ground Six.

## Ground Seven:

Trice asserts that trial counsel rendered ineffective assistance by not calling an expert to explain how Trice's emotional shock after the shooting and his law enforcement training affected his personality and his demeanor.  The respondent argued that trial counsel's decision not to call an expert was reasonable trial strategy.

Officers testified at trial that Trice was emotionless and nonchalant after the shooting. Trice claims trial counsel should have called an expert to testify that Trice's training as a police officer and Trice's shock from the shooting induced a state of indifference. Trial counsel testified at the post-conviction hearing that he did not call an expert because his strategy was to rely on the jurors' common sense.

At the post-conviction evidentiary hearing, trial counsel testified that "he would not have called an expert on the issue of whether [Trice] suffered from a psychogenic shock after he was stabbed." (Respondent's Exhibit 5C, at 439) Trial counsel continued that "it was his preference not to use an expert witness when he could easily demonstrate the same thing by relying on common sense." Trial counsel testified that he had "elicited testimony on cross-examination and from his own witness that [Trice] was in a state of psychogenic shock following the murder." (Respondent's Exhibit 5C at 439–40) Indeed, trial counsel presented the testimony of the first paramedic to observe Trice after the shooting. The paramedic testified on direct examination that Trice had a rapid pulse, was sweaty, was agitated, and was nervous. On cross-examination, the paramedic testified that after the shooting Trice was suffering from psychogenic shock. (Respondent's Exhibit 5C at 440)

The post-conviction court held (1) that trial counsel's preference — to rely on one's common sense rather than complicate matters with an expert — was a strategy used to avoid the unnecessary use of experts; (2) that "instead of theorizing, through expert witnesses, over whether demeanor is indicative of guilt, over whether [Trice's] demeanor was cold or aloof, and whether any conclusion about [Trice] could be

drawn from that demeanor, the defense simply called a witness who described [Trice] as being in a state of shock"; and (3) that trial counsel's strategy of not calling experts unless absolutely necessary was reasonable. Trice's claim concerning trial counsel's failure to call an expert witness fails. In reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland,* 104 S. Ct. at 2065. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." As noted above, a tactical decision by trial counsel is ineffective assistance only if not presenting the defense was so patently unreasonable that no competent attorney would have chosen that strategy. *Adams*, 709 F. 2d at 1445. Contrary to Trice's argument that he needed an expert to inform the jurors that he was suffering from psychogenic shock, trial counsel presented evidence that Trice was suffering from psychogenic shock by calling the paramedic who responded to the scene. Trial counsel's strategy not to call an expert witness did not prejudice Trice because evidence describing his alleged shock was presented to the jurors. The state court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient. Accordingly, Trice is entitled to no habeas relief on Ground Seven.

**Ground Eight:**

Trice claims he received ineffective assistance of counsel because trial counsel misadvised him by telling him his employment file as a Florida State Trooper was not admissible. At the time of the shooting, Trice had worked for the Florida Highway Patrol (FHP) for fourteen years. Although Trice claims that during his service at FHP he never received a complaint for excessive force or violent behavior, the former in-laws of Trice's ex-girlfriend claim that Trice threatened them — an allegation that appears in Trice's FHP file.

Trial counsel testified at the post-conviction hearing that he did not recall every reason why he did not introduce Trice's FHP file in evidence, but trial counsel testified that he would introduce into evidence only information helpful to Trice. At the evidentiary hearing, portions of Trice's FHP file were read into the record; the FHP file included a report of an encounter between Trice and his ex-girlfriend's former in-laws.

According to the report, Trice's girlfriend rented a residence from her former in-laws. Trice encountered the former in-laws at the rented residence while he was on duty. An argument ensued. Trice allegedly threatened the former in-laws and allegedly attempted to taunt them into an attack so that he could arrest them. Testimony at the post-conviction hearing confirmed that Trice's FHP file was not admitted because of the incident. The post-conviction court's order denying relief quotes trial counsel approvingly (Respondent's Exhibit 5C at 441):

> I'm reasonably confident that given the nature of the allegations [in this case], the nature of the testimony of the witnesses that were going to [be] talking about [the victim's] alleged fears, and what this entry in the record about the allegations that he had been in his girlfriend's house and had a heated confrontation with her parents and became abusive, I would never want to place this before a jury.

After hearing the testimony at the evidentiary hearing, the post-conviction court held that trial counsel's omitting Trice's FHP record did not violate Trice's constitutional right to effective counsel.

Trial counsel's decision to omit Trice's FHP record based on the confrontation with his ex-girlfriend's former in-laws was a conscious and reasonable strategic decision. Testimony at the hearing confirms that trial counsel strategically decided that the detriment from admission of the encounter with Trace's ex-girlfriend's former in-laws negated or, at least, outweighed any benefit Trice might gain by admitting Trice's FHP record. The post-conviction court was objectively reasonable in its application of *Strickland*. Accordingly, Trice is entitled to no habeas relief on Ground Eight.

**Ground Nine:**

Trice alleges he received ineffective assistance because trial counsel did not move to recuse the judge after allegedly adverse comments by the judge about Trice. The respondent argues both that Trice failed to produce any evidence to support this claim and that trial counsel said he was unaware of any such comments.

In support of his claim Trice states that the trial judge's attendance at a domestic violence seminar the night before the trial was reported in *The Tampa*

*Tribune*.  Trice said his mother-in-law attended the seminar and spoke directly with the trial judge.  (Respondent's Exhibit 5C at 444)  Trice testified that the trial judge told him at his pre-trial bail hearing that she did not like the way he treated women.  He further avers that the trial judge admonished him for crying when the 911 tape was played in open court at his trial.  Finally, Trice said the trial judge stated at his sentencing that, as an example to others, she would exceed the guidelines and sentence him to life imprisonment.

Trice had the burden of proof during the state post-conviction proceeding and, under *Bester v. Warden*, 836 F. 3d 1331, 1338 (11th Cir. 2016), he has the burden of establishing prejudice under *Strickland*.  None of the allegedly improper comments during the pretrial conference or the sentencing were found in the record, and at the post-conviction evidentiary hearing Trice produced no record of an improper comment by the trial judge.  Trice was unable to produce a newspaper article reporting that the trial judge commented about him or that the trial judge attended the domestic violence conference the night before his trial.  In fact, Trice's mother-in-law, specifically addressing the domestic violence conference allegation, testified that she was at the domestic violence conference but that she neither saw the trial judge nor spoke with her.  Because the evidence presented at the post-conviction hearing refutes his allegations, Trice fails to meet his burden to show that that the post-conviction court unreasonably applied *Strickland*.  Accordingly, Trice is entitled to no habeas relief on Ground Nine.

**Ground Eleven:**

Trice avers that trial counsel rendered ineffective assistance by not moving for a change of venue because his case was a high profile case with unusually extensive media coverage, which potentially biased the jury pool.

During *voir dire* the trial court asked potential jurors whether any of them had heard about the case and whether anyone had formed an opinion about the case. (Respondent's Exhibit 1D at 25) Trial counsel questioned each prospective juror on whether they had seen media reports about the case and whether any had formed an opinion because of those media reports. (Respondent's Exhibit 1G at 503–651) Those who had formed an opinion were excluded from the jury. The post-conviction court held that trial counsel acted reasonably. Without some prejudicial effect, even inordinate widespread publicity fails to warrant a change of venue. *Baldwin v. Johnson*, 152 F. 3d 1304, 1314 (11th Cir. 1998). Trice fails to show how the pretrial publicity prejudiced his case. Trice failed to demonstrate how he was prejudiced by trial counsel's failure to move for a change in venue. Because Trice did not establish prejudice under *Strickland*, the post-conviction court's denial of this claim was reasonable. Trice is entitled to no habeas relief on Ground Eleven.

**Ground Twelve:**

Trice alleges that trial counsel provided ineffective assistance by not objecting to the police officers' testifying while wearing their uniforms but not appearing in an official capacity. Trice claims the officers' uniforms bestowed on them an extra

credibility. Trice also claims that trial counsel should have objected to the prosecutor's closing argument that suggested that he — as a trained law enforcement officer — was trained to testify in court and should not be believed. The respondent argues that Trice offers neither substantive law nor a procedural rule that supports his contention that an officer testifying in a non-official capacity should not wear a police uniform.

In fact, no law or rule prevents an officer from wearing a uniform while testifying in court, even if not testifying in his official capacity. *See Zaken v. Kelly*, 370 Fed. App'x 982, 987–88 (11th Cir. 2010) (holding that, although the officers were sued in their individual capacity, the fact the defendants were police officers would emerge at trial because the plaintiff alleged the officers' use of excessive force)). Likewise, even if the officers in this case had not worn a uniform, the fact that they were police officers would have emerged. The officers were Trice's colleagues and testified about Trice's threatening statements about the victim, but because a law enforcement officer can wear a uniform while testifying, trial counsel's not objecting was not deficient performance. Any objection was meritless and trial counsel is not deficient for failing to assert a meritless objection.

Further, Trice alleges that "[t]rial counsel failed to object and preserve the [prosecutor's] improper comment during closing argument essentially that Trice was a trained law enforcement officer and was therefore trained to testify and should not be believed." Trice points to no statement by the prosecutor that Trice could not be trusted because of his training as a law enforcement officer. The trial court

rejected this claim because Trice failed to identify with any specificity the argument Trice claims the prosecutor advanced.

The prosecutor's mention of Trice's past employment as a Florida State Trooper would have no prejudicial effect upon the jurors' because Trice's position as a state trooper was already known. Further, while he speculates that the prosecutor's comments attacked his credibility, Trice identifies no objectionable comment. "A convicted defendant making a claim for ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Trice's contention that trial counsel failed to object to comments that might have attacked Trice's credibility is too general and conclusory. Consequently, trial counsel did not provide ineffective assistance by not objecting to the prosecutor's closing remarks, nor did the post-conviction court err by determining that Trice was provided with effective assistance. Accordingly, Trice is entitled to no habeas relief on Ground Twelve.

**Ground Thirteen:**

Trice claims that the trial court improperly denied his request to apply a substantial change in the law governing the duty to retreat by a co-occupant of a home in a case of self-defense. Trice argues that under *Weiland v. State*, 732 So. 2d 1044, 1058 (Fla. 1999), a defendant who is attacked in his home by a co-occupant of that home has no duty to retreat before using deadly force in self-defense. *Weiland* applied to future cases and cases that were not final when the decision was issued.

Both the respondent and Trice agree to his entitlement to *Weiland* because his case was not yet final when *Weiland* issued.

Under Florida statutory and common law, a person may use deadly force in self-defense if the person reasonably believes that deadly force is necessary to prevent imminent death or great bodily harm. Fla. Stat. § 776.012. Before *Weiland*, even in a person's home, a person had a limited duty to retreat to prevent the loss of life. *Hedges v. State*, 165 So. 2d 213, 214–15 (Fla. 2d DCA 1964). *Weiland*, 732 So. 2d at 1058, eliminated the duty to retreat in one's own home before resorting to deadly force against a co-occupant or invitee when necessary to prevent death or great bodily harm.[2]

Furthermore, under *Weiland* a person's duty to retreat is inapplicable to Trice because *Weiland* applies to co-occupants of a residence. Trice was no longer a co-occupant of the residence with the victim. Trice had been barred from the residence by a domestic violence injunction that prohibited Trice from entering the residence, except through an exterior door into his office. The evidence at trial showed that Trice violated that injunction and entered the residence through the garage. Any reliance on *Weiland* by Trice as a co-occupant of the residence would necessarily fail because Trice was no longer a co-occupant of the residence. As a consequence, by violating the domestic violence injunction, Trice was a trespasser.

---

[2] To benefit from a change in the law based on a Florida supreme court decision, the defendant must timely object at trial if an objection was required to preserve the issue for appellate review. *Smith v. State*, 598 So. 2d 1063, 1066 (Fla. 1992). Trice neither objected based on *Weiland* at trial nor raised *Weiland* on direct appeal.

Therefore, he may not now obtain habeas relief under *Weiland*. Accordingly, Trice is entitled to no habeas relief on Ground Thirteen.

## CONCLUSION

To summarize, Trice fails to meet his burden to show that the state court's decisions were either based upon an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Accordingly, Trice's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Trice, terminate any pending motions and deadlines, and close this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Trice is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Trice must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Trice is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Trice must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 7, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE